Lincoln Davis Wilson, #11860
**FIRST & FOURTEENTH, PLLC**
784 S. Clearwater Loop, Suite #8011,
Post Falls, ID 83854
Phone: (719) 428-4937
Email: lincoln@first-fourteenth.com

Julian R. Ellis, Jr. (pro hac vice)
Laura J. Ellis (pro hac vice)
**FIRST & FOURTEENTH, PLLC**
2 N. Cascade Ave., Suite 1430
Colorado Springs, CO 80903
Phone: (719) 286-2475
Emails: julian@first-fourteenth.com
         laura@first-fourteenth.com

*Attorneys for Defendant Western*
*Association of Fish and Wildlife Agencies*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF IDAHO**

| | |
|---|---|
| United States of America ex rel. The Tarbel Group, LLC<br><br>     Plaintiff,<br><br>   v.<br><br>Western Association of Fish and Wildlife Agencies and Unknown John or Jane Does,<br><br>    Defendants. | Case No.: 1:25-cv-00144-DCN<br><br>**DEFENDANT'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS [Doc. 26]** |

Defendant Western Association of Fish and Wildlife Agencies (WAFWA) respectfully files this memorandum in support of its motion to dismiss the complaint filed by Relator The Tarbell Group, LLC.[1]

---

[1] Undersigned counsel conferred with Relator's counsel via email on June 7, 2026, to discuss this motion. The parties did not resolve their disagreement.

**INTRODUCTION**

This case is part of a series of actions filed by Relator in federal courts across the country. Relator's strategy is simple: mine publicly available information about a Covid-era loan forgiveness program called the Paycheck Protection Program (PPP), file threadbare, form complaints under the False Claim Act (FCA) alleging nonprofit recipients were ineligible for PPP loans, and force settlements from organizations that have limited resources to defend a lawsuit because they are focused on not-for-profit purposes rather than litigating to protect corporate profits. Relator has pursued that strategy against WAFWA here and against 21 other defendants in a companion case assigned to this Court. But the claims as pled fail as a matter of law, particularly as to WAFWA.

WAFWA and its supporting foundations (the WAFWA Foundation and Species Restoration Foundation) are 501(c)(4) and 501(c)(3) organizations, respectfully. WAFWA is a collaboration of 23 states and Canadian provinces[2] that supports resource management and builds partnerships to conserve wildlife for the use and benefit of all citizens. Because of WAFWA's work and its association with state governments, it and its supporting foundations make their IRS Form 990 and audited yearly financials available to the public. *See* Public Reporting, WAFWA.org, *available at* https://wafwa.org/about-us/financial-statements/. WAFWA also performs annual audits in compliance with the Single Audit Act, 31 U.S.C. §§ 7501–06, and related regulations. Its audit for the fiscal year-end June 30, 2021—which specifically discloses the PPP loan at issue in this case—is publicly available on WAFWA's website and the Federal Audit Clearinghouse. *See id.*; *see also* 2021

---

[2] Members include the commissioners and agency heads from: the States of Alaska, Arizona, California, Colorado, Idaho, Kansas, Montana, Nebraska, Nevada, New Mexico, North Dakota, Oklahoma, Oregon, South Dakota, Texas, Utah, Washington and Wyoming, and the Provinces of Alberta and British Columbia, Northwest Territories, Saskatchewan, and the Yukon.

Audit Submissions for WAFWA, FAC.gov, *available at*
https://app.fac.gov/dissemination/report/pdf/2021-06-CENSUS-0000241135.

When the Covid-19 pandemic emerged in early 2020, it unleashed unprecedented economic disruption across the globe. Congress responded with the Coronavirus Aid, Relief, and Economic Security Act (CARES Act), Pub. L. No. 116-136, 134 Stat. 281 (2020), which established the PPP. The PPP's purpose was to provide forgivable loans to organizations, including some nonprofits, so they could maintain payroll, keep their employees, and preserve the economic infrastructure that communities depend on. The program was implemented at extraordinary speed by the U.S. Small Business Administration (SBA), with guidance evolving on a near-weekly basis as the federal government adapted to the scale of the crisis.

At the same time, these loan programs were changing rapidly, and organizations (for-profit and not-for-profit alike) were trying to stay afloat, a critical need for the global economy. Eligibility rules shifted repeatedly as Congress enacted successive amendments—the Paycheck Protection Program Flexibility Act of 2020, the Economic Aid to Hard-Hit Small Businesses, Nonprofits, and Venues Act (December 2020), and the American Rescue Plan Act of 2021—each expanding and modifying the universe of eligible borrowers. Lenders, borrowers, and the SBA itself were navigating uncharted territory amid genuine uncertainty.

For its part, Relator has seized on the pandemic-era chaos for its own post-hoc enrichment. Relator is a Virginia LLC that exists to mine publicly available federal databases, identify nonprofit PPP loan recipients, and file boilerplate qui tam lawsuits across the country alleging ineligibility. Relator has filed at least 13 other such suits in eight federal districts. It is not a whistleblower. It possesses no insider knowledge. It has no relationship with WAFWA. It has contributed nothing to the public's understanding of fraud. And the federal government—after investigating Relator's allegations in this case—declined to intervene. Because

Relator's conclusory complaint suffers from incurable legal defects, the Court should dismiss it in its entirety, and with prejudice.

**BACKGROUND**

Relator filed its 17-paragraph complaint against WAFWA on March 14, 2025, accusing it of duping the federal government into approving, and later forgiving, a $144,371 PPP loan. (*See generally* Compl., Doc. 1.) The recitation of WAFWA's supposedly fraudulent conduct consists of nine threadbare paragraphs:

- ¶¶6–8: Generally describe the legislation that created and implemented the PPP and offer nothing about WAFWA.

- ¶9: Summarily states WAFWA "applied for and received a PPP Loan for which it was legally ineligible."

- ¶10: Summarily states the loan amount and date, and the amount forgiven and the date, all of which are publicly available data.[3]

- ¶12: Summarily states WAFWA "was ineligible to receive its PPP Loan(s) at the time it applied and received approval for the same."

- ¶13: Summarily states WAFWA "did knowingly present … a false or fraudulent claim for payment or approval … by falsely certifying that [WAFWA] was eligible for a PPP Loan" without any other details.

- ¶14: Summarily states WAFWA "did knowingly make, use, or cause to be made or use, a false record or statement material to a false or fraudulent claim … by falsely certifying that [WAFWA] was eligible for a PPP Loan" without any other details.

- ¶15: Summarily states WAFWA "did knowingly make, use, or cause to be made or used, a false record or statement material to, or did knowingly conceal, or did knowingly and improperly avoid or decrease, an obligation to pay or transmit money or property to the United States government, by falsely certifying that [WAFWA] was eligible for a PPP Loan," again, without any other details.

Relator offers ***no*** information on who submitted the loan application, to whom it was submitted, whether banks, advisors, or other third parties were involved in preparing or advising on the application and forgiveness request, any conversations or advice provided by advisors and consultants on the loan process,

---

[3] ¶11: This paragraph incorporates prior paragraphs by reference.

any internal discussions at WAFWA about the process, the content and disclosures made in the loan application, the content and disclosures made to the U.S. Small Business Administration when the loan was forgiven, or any conversations with approval and forgiveness entities. Relator doesn't allege that information because it is not a true whistleblower, and none of that information is available from the public documents that Relator used to draft its claims.

Not only are the allegations conclusory, but they track nearly verbatim those in the complaint filed in *United States ex rel. The Tarbell Group, LLC v. Appaloosa Horse Club, et al.*, No. 3:25-cv-145-DNC (D. Idaho). There, Relator sued 21 entities on the same FCA theories. Currently pending before this Court in that case are eight motions to dismiss by various defendants (*see* Docs. 12, 24, 25, 38, 40, 50, 56, and 62). WAFWA now moves to dismiss Relator's recycled complaint as well.

### LEGAL STANDARDS

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. While the Court must accept well-pleaded factual allegations, it disregards "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Because Relator's claim is based on fraud, it must also satisfy Rule 9(b), which requires a plaintiff to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). Relator must allege the "who, what, when, where, and how of the misconduct charged." *Ebeid ex rel. United States v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010). "Mere conclusory allegations of fraud are insufficient," as are "[b]road allegations that include no particularized supporting detail." *United States ex rel. Swoben v. United Healthcare Ins.*, 848 F.3d 1161, 1180 (9th Cir. 2016).

## ARGUMENT

The entire complaint should be dismissed with prejudice for two independent reasons. *First*, Relator cannot clear the FCA's public-disclosure bar, and that defect requires dismissal, *see* 31 U.S.C. § 3730(e)(4)(A). *Second*, the complaint fails to state a claim for relief under Rules 12(b)(6) and 9(b), because Relator has not (and cannot) plead scienter and materiality with the particularity required by the FCA. Those two infirmities resolve the case in WAFWA's favor.

Relator's reverse-false-claim theory fails for yet another reason: it is duplicative of Relator's other FCA theory and is not based on any established duty to pay the government.

## I.   WAFWA Incorporates Certain Arguments From No. 3:25-cv-145-DNC

To avoid duplicative briefing, promote judicial economy, and minimize the time and expense for all parties, WAFWA adopts and incorporates by reference the arguments and authorities set forth in the motion to dismiss filed by four defendants in No. 3:25-cv-145-DNC (Doc. 56-1), to the extent those arguments are consistent with and supportive of the grounds for dismissal set forth in this motion.[4] Specifically, WAFWA incorporates by reference:

- **Doc. 56-1, Part I, at 6–13:** Defendants' public-disclosure bar arguments, including the discussion of the SBA's PPP Database as a "federal report," the application of the Ninth Circuit's "X + Y = Z" framework, and the original-source analysis.

- **Doc. 56-1, Part II, at 13–17:** Defendants' arguments on failure to plead scienter and materiality with particularity.

- **Doc. 56-1, Part III, at 17–18:** Defendants' arguments on the duplicative nature of the reverse-false-claim theory and the absence of an established duty.

---

[4] While the complaint against WAFWA is a separate action, it was filed on the same date by the same Relator, advances nearly the same legal theories, and suffers from similar deficiencies. The Court's resolution of the motions to dismiss in No. 3:25-cv-145-DNC is therefore directly relevant to WAFWA's motion.

6

WAFWA also adopts and incorporates by reference the arguments and authorities from the motions to dismiss filed by the other defendants in No. 3:25-cv-145-DNC (Docs. 12, 24, 25, 38, 40, 50, and 62), to the extent those arguments apply to the claims asserted against WAFWA.

## II.  WAFWA's Additional Public-Disclosure Bar Argument Requires Dismissal

The FCA mandates that "[t]he court shall dismiss an action or claim under this section … if substantially the same allegations or transactions as alleged in the action or claim were publicly disclosed" in a (1) federal criminal, civil, or administrative hearing; (2) a federal report, hearing, audit, or investigation; or (3) the news media.[5] 31 U.S.C. § 3730(e)(4)(A). This bar is "an effort to strike a balance between encouraging private persons to root out fraud and stifling parasitic lawsuits" based on information that is already public. *Graham Cnty. Soil & Water Conservation Dist. v. U.S. ex rel. Wilson*, 559 U.S. 280, 295 (2010). Relator cannot clear the FCA's public-disclosure bar.

***The FCA's public-disclosure bar applies to federal audits.*** In addition to the bases for dismissal incorporated above (*see* Part I, *supra*), the public-disclosure bar forecloses this lawsuit for another reason: the loan information Relator recites in its complaint was disclosed to the federal government in an audit and was publicly available years before this lawsuit was filed. As part of the FCA's public-disclosure bar of qui tam lawsuits, subsection 3730(e)(4)(A)(ii) includes as part of public documents "other Federal report[s], hearing[s], ***audit[s]***, or investigation[s]." (Emphasis added.) The Ninth Circuit has said that "Congress intended for prong (ii) to cover a wide array of investigatory processes." *United States v. Allergan, Inc.*, 46 F.4th 991, 998 (9th Cir. 2022). Basically, it applies to "a

---

[5] Exceptions exist when the federal government opposes dismissal (which it has not done here), and when the relator is the "original source" of the information in the publicly available materials or proceedings (which Relator is not).

fact-finding or investigatory process 'to *obtain* information.'" *Id.* (quoting *Schindler Elevator Corp. v. United States ex rel. Kirk*, 563 U.S. 401, 410 (2011)).

During the relevant timeframe, WAFWA was subject to the Single Audit Act (SAA), 31 U.S.C. §§ 7501–06. For the fiscal year end June 30, 2021, an independent accounting firm audited WAFWA in accordance with Government Auditing Standards and the SAA, which requires non-federal entities that expend federal awards above a certain amount to undergo audits assessing compliance with federal law. § 7502(a). These audits are mandated by federal statute, must be "conducted by an independent auditor in accordance with generally accepted government auditing standards," § 7502(c), and, critically, their results must be transmitted to a "Federal clearinghouse designated by the Director" and made "available for public inspection." § 7502(h). Indeed, audits required by the SAA are conveniently housed in a publicly available federal database and website maintained by the Federal Audit Clearinghouse: https://app.fac.gov/.

***Relator's allegations are substantially similar to (but less detailed than) WAFWA's public SAA audit.*** WAFWA's SAA audit discloses the limited factual predicates of Relator's complaint.[6] Start with WAFWA and its supporting foundations' nonprofit tax status:

---

[6] WAFWA's 2021 audit is available on the Federal Audit Clearinghouse website at https://app.fac.gov/dissemination/report/pdf/2021-06-CENSUS-0000241135, and is subject to judicial notice, *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) (explaining when public records are subject to judicial notice).

> **Note A – Summary of Significant Accounting Policies (Continued)**
>
> *Income Taxes*
>
> WAFWA, SRF, and FWFW are organized as Idaho nonprofit corporations. WAFWA and SRF have been recognized by the Internal Revenue Service (IRS) as exempt from federal income taxes under Section 501(a) of the Internal Revenue Code as organizations described in Section 501(c)(4). FWFW has been recognized by the Internal Revenue Service (IRS) as exempt from federal income taxes under Section 501(a) of the Internal Revenue Code as an organizations described in Section 501(c)(3), qualifies for the charitable contributions deduction under Section 170(b)(1)(A)(vi), and has been determined not to be a private foundation under Section 509(a)(1). Each entity is annually required to file a Return of Organization Exempt from Income Tax (Form 990) with the IRS. In addition, the entities are subject to income tax on net income that is derived from business activities that are unrelated to their exempt purposes. Management has determined that each entity is not subject to unrelated business income tax and has not filed an Exempt Organization Business Income Tax Return (Form 990-T) with the IRS.

The SAA audit clearly discloses—in Note A, no less—that WAFWA and SRF are 501(c)(4)s and FWFW is a 501(c)(3).

Next are the details of the PPP loan transaction. They, too, are prominently disclosed and described in the SAA audit submitted to the federal government and publicly available. Note N, labeled "CARES Act," states plainly:

> **Note G – CARES Act**
>
> In April 2020, the Association was granted a loan (the "PPP Loan") from Zions First National Bank in the amount of $143,600, pursuant to the Paycheck Protection Program (the "PPP") under Division A, Title I of the CARES Act, which was enacted March 27, 2020. The PPP Loan matures in April 2022 and bears interest at a rate of 1.00% per annum, payable monthly commencing in November 2020. The Association may only use funds from the PPP Loan for purposes specified in the CARES Act and related PPP rules, which include payroll costs, costs used to continue group health care benefits, rent, and utilities; other uses will constitute a default under the PPP Loan. Under the terms of the PPP, certain amounts of the PPP Loan may be forgiven if they are used for qualifying expenses as described in the CARES Act during the 24-week period commencing on the date of disbursement of the PPP Loan. During the year June 30, 2021 the Association used the entire PPP Loan amount for qualifying expenses and applied for and received loan forgiveness of the principal and accrued interest from the lender, therefore the entire $143,600 PPP Loan balance and $771 in accrued interest was recorded as revenue for the year ended June 30, 2021.

Indeed, the information in the SAA audit—which was publicly available years before Relator filed this lawsuit—provides more details on the PPP loan than the complaint. Relator alleges only that WAFWA is a 501(c)(4) that obtained a PPP loan in April 2020, for $143,600.00, which was forgiven in the amount of $144,371.11 on

November 2020. (*See* Compl., ¶¶ 4, 10, Doc. 1.) Comparatively, in a single paragraph, the publicly available SAA audit discloses:

- The authorizing bank that reviewed and approved the PPP application.
- The principal amount of the PPP loan.
- The statutory grant that the CPAs believed authorized the PPP loan.
- The interest rate, monthly payment term, payment start date, and maturity date of the PPP loan.
- The terms of forgiveness under the program.
- The audited use of proceeds of the PPP loan for qualifying uses.
- The amount of principal and interest forgiven.
- And how the principal and interest that was forgiven were booked for purposes of financial and tax accounting.

Relator claims that WAFWA applied for and obtained a PPP loan despite supposedly "knowing" it was ineligible as a 501(c)(4). But all Relator offers to support that serious accusation are publicly available facts—WAFWA's tax-exempt status and the existence of its PPP loan—that were disclosed long before this lawsuit was filed. These are precisely the kind of parasitic allegations the public-disclosure bar precludes. *See United States ex rel. Relator, LLC v. Kootstra*, 2024 WL 3666470, at *2 (E.D. Cal. Aug. 6, 2024) (finding relator's claim that defendant applied for and obtained a PPP loan despite knowing they were ineligible to do so as a mortgage lender was barred by the public-disclosure bar because defendant's mortgage-lender status and PPP loan were publicly disclosed).

**    *Relator plainly was not the "original source" of the SAA audit inputs.***
To overcome the public-disclosure bar, Relator must plead and prove it was the "original source" of the information on which its complaint is based. *See* 31 U.S.C. § 3730(e)(4)(A). Original source is defined as "an individual who either (i) prior to a public disclosure …, has voluntarily disclosed to the Government the information on which allegations or transactions in a claim are based, or (2) who has knowledge

10

that is independent of and materially adds to the publicly disclosed allegations or transactions, and who has voluntarily provided the information to the Government before filing an action under this section." *See* 31 U.S.C. § 3730(e)(4)(B). Realtor does not (and cannot) meet its burden under the original-source rule.

*First*, Relator does not contend it was the original source of the information in the complaint. Nor could it; information about WAFWA's tax status and the PPP loan clearly did not emanate from a Virginia, single-purpose LLC that has no tie to a non-profit in Idaho. This is fatal.

*Second*, Relator cannot have "knowledge that is independent of and materially adds to the publicly disclosed allegations," because the complaint's meager allegations do not even reflect the detailed, publicly disclosed information that is available in the SAA audit. Rather than Relator adding through its complaint pertinent factual predicates of "fraud" on the government, the SAA audit appears to add to Relator's factual allegations—and with public information. In other words, the available public data adds to Relator's understanding of WAFWA's PPP loan transaction, not the other way around.

* * *

At bottom, WAFWA's publicly available SAA audit disclosed every material fact at issue here: WAFWA's 501(c)(4) status, the receipt and amount of the PPP loan, the application for and receipt of loan forgiveness, and the total amount forgiven. A member of the public reviewing this audit—available both on the Federal Audit Clearinghouse website and WAFWA's website—would know everything Relator knows, and perhaps more. This is a classic application of the public-disclosure bar to "discourag[e] litigation by plaintiffs who have no significant information of their own to contribute" to the theory of the case. *See United States ex rel. Mateski v. Raytheon Co.*, 816 F.3d 565, 570 (9th Cir. 2016).

11

### III.    Dismissal Should Be With Prejudice

Relator cannot cure the pleading deficiencies identified in this motion; therefore, any amendment would be futile, and the Court should dismiss with prejudice. *Creech v. Tewalt*, 84 F.4th 777, 789 (9th Cir. 2023).

*First*, Relator cannot overcome the public-disclosure bar because it is not the original source of information on which its complaint is based. (*See* Part II, *supra*.) When a relator cannot state a claim "without violating the public-disclosure bar" any "amendment is futile" and the case should be "dismissed with prejudice." *United States v. Jones*, 2025 WL 3240804, at *4 (N.D. Cal. Nov. 20, 2025); *United States v. Williams*, 2025 WL 4003507, at *4 (N.D. Cal. June 27, 2025) (same).[7]

*Second*, Relator cannot comply with Rule 9(b) because there is no fraud to plead. Nor would an individual completely foreign to the PPP-loan transaction have information to counter the information available to WAFWA's actual decision-makers and advisors (the bankers, attorneys, and CPAs who reviewed, consulted on, and audited the loan transaction). *See Santana v. BSI Fin. Servs., Inc.*, 495 F. Supp. 3d 926, 947 (S.D. Cal. 2020) ("In a fraud action against a corporation, a plaintiff must 'allege the names of the persons who made the allegedly fraudulent representations, their authority to speak, to whom they spoke, what they said or wrote, and when it was said or written.'"). In the end, Relator offers threadbare allegations of fraud because that's all it has. WAFWA has been audited under

_____

[7] WAFWA also reserves the right to move for attorneys' fees and costs under 31 U.S.C. § 3730(d)(4). A straightforward application of the public-disclosure bar based on WAFWA's 2021 SAA audit and Relator's failure to plead or mention whether it is the "original source" of the information in its complaint clearly forecloses Relator's FCA claim, triggering fees under § 3730(d)(4). *See Amphastar Pharms. Inc. v. Aventis Pharma SA*, 2017 WL 10543563, at *6 (C.D. Cal. Nov. 20, 2017) ("Courts have awarded attorney's fees where the plaintiff's qui tam fraud claim was based on publicly disclosed information of which the plaintiff was not the original source." (quoting *United States ex rel. Woodruff v. Hawaii Pac. Health*, 2009 WL 734057, at *8 (D. Haw. Mar. 18, 2009)) (collecting cases)).

federal statute. The federal government had the opportunity to further investigate but declined intervention. That is, the government investigated, declined to participate, and walked away. There is nothing here to amend into existence.

## CONCLUSION

The Court should grant WAFWA's motion to dismiss and dismiss Relator's complaint with prejudice. Further, the Court should grant WAFWA leave to move for its attorneys' fees and costs under 31 U.S.C. § 3730(d)(4).

Dated: June 9, 2026.                    Respectfully submitted,

                                        **FIRST & FOURTEENTH, PLLC**

                                        */s/ Julian R. Ellis, Jr.*
                                        Lincoln D. Wilson, #11860
                                        Julian R. Ellis, Jr. (pro hac vice)
                                        Laura J. Ellis (pro hac vice)

                                        *Attorneys for Defendant Western*
                                        *Association of Fish & Wildlife Agencies*

13

## CERTIFICATE OF SERVICE

I hereby certify that on June 9, 2026, the foregoing **DEFENDANT'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS [Doc. 26]** was e-filed and served via the CM/ECF system to registered counsel for all parties.

*/s/ Julian R. Ellis, Jr.*
Julian R. Ellis, Jr.

*Attorney for Defendant Western Association of Fish & Wildlife Agencies*